MISSISSIPPI STATE HIGHWAY COMMISSION *v.* MITCHELL, et ux.

No. 43191          November 9, 1964          168 So. 2d 512

*Joe T. Patterson,* Attorney General, Jackson; *Tate Thigpen, G. B. Keaton,* Picayune, for appellant.

*Granville Williams,* Picayune; *Williams & Williams,* Poplarville, for appellees.

Jones, J.

Appellees, J. E. Mitchell and wife, owned 1900 acres of land, a small portion in Section 35, Township 5 South, Range 17 West; practically all of Section 36, Township 5 South, Range 17 West; all of Section 31, Township 5 South, Range 16 West, less the E½ of E½ of E½; and all of Section 30, Township 5 South, Range 16 West, in Pearl River County. Appellant, Mississippi State Highway Commission, filed eminent domain proceedings for condemnation of a right of way for highway purposes. The right of way entered on the south into the lands in Section 31 and extended in a northeasterly direction to a point a short distance south of the northeast corner of NE¼ of SE¼ of Section 30. The point of entry on the south was approximately 200 feet east of the southwest corner of SE¼ of Section 31. The points of entry and exit above mentioned are with reference to the west line of the right of way. It was of various widths but contained 68 acres and left on the east side 180 acres with access thereto prevented by the proposed highway. The jury returned a verdict for $173,-000, which we consider grossly excessive, and therefore reverse the case for another trial unless a remittitur is entered.

Appellees' property was highly developed. It was used for pasture, timber growing, tung orchards and farming. The western boundardy was U.S. Highway 11, on which the lands of appellee bordered for one mile. There was a public road along the south boundary which was severed by the new highway. There were five farm roads which were also severed. The highway was to be a non-access road.

There was a creek through the approximate center of the lands west of the new highway and there were a number of ponds on the property — two on the 180 acres east of the highway. With the construction of the new highway, entry from the west onto the 180 acres required a trip of eleven miles, or twenty-two miles round trip. The lands were one mile north of the corporate limits of the City of Picayune. The buildings and improvements were all situated on the NW¼ of the SW¼ of Section 36, fronting U. S. Highway 11. The right of way condemned was approximately an average of one and one-half miles east of the residence, barnes, etc. The west end of the property was adjacent to the Country Club on the south.

In the right of way itself were twenty-two acres in tung trees, sixteen acres of improved pasture, and 29.94 acres in timber or trees. As to the 180 acres on the east side, 95 acres were improved pasture, 75 acres in tung trees, and 11 acres in timber.

On the trial, as has been customary for some time in this type of case, the testimony of witnesses for the State and the landowner varied tremendously. The testimony as to values and damages was as follows:

For the State:

| Name | Before Value | After Value | Damages |
|---|---|---|---|
| J. W. Morgan | $ 415,000.00 | $ 385,500.00 | $ 29,500.00 |
| Charles B. Moore | 408,500.00 | 378,900.00 | 29,600.00 |
| F. L. Arbogast | 593,225.00 | 560,360.00 | 32,865.00 |
| Carle Cooper | 600,000.00 | 563,700.00 | 36,300.00 |

For the appellees:

| | | | |
|---|---|---|---|
| J. E. Mitchell | $1,133,000.00 | $ 960,375.00 | $172,625.00 |
| Ferris E. Tate | 812,900.00 | 656,430.00 | 156,470.00 |
| C. C. Barefoot | 1,043,836.00 | 934,316.00 | 109,520.00 |
| O. A. Davis | 1,325,500.00 | 1,224,550.00 | 100,950.00 |
| E. F. Loe | 765,150.00 | 657,804.00 | 107,346.00 |

It will be observed that the highest estimate of damages was by one of the appellees and that the jury's verdict exceeded his estimate.

Mr. Mitchell was a very prominent and influential man. He was vice president and a member of the loan committee of the First National Bank at Picayune, and a trustee of the Crosby Memorial Hospital at Picayune, and also held other positions of honor and prestige.

In view of the vast discrepancies in the evidence, we are left in a state of confusion and wonder. It is said that the jury viewed the property and fixed the damages. Another jury in the eminent domain court viewed the property and in their judgment the damages amounted to $75,000, a difference of $98,000 in the two juries. In this chaotic condition, we are forced to consider in detail what this record shows. ▮▮ ▮ This Court has carefully done so, and is convinced that, on this record, a verdict in excess of $86,000 is grossly excessive — so much so as to show bias and prejudice on the part of the jury and to require a reversal.

However, if within fifteen days from the time this judgment becomes final, appellees will accept and enter a remittitur of $87,000, thus reducing the award to $86,000, the judgment will be affirmed as modified. Otherwise the case is reversed and remanded for a new trial.

Reversed and remanded unless remittitur is entered.

*Lee, C. J., and McElroy, Rodgers and Brady, JJ.,* concur.